UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No: 6:23-cr-10-PGB-DCI

SAMUEL ERNESTO MENDEZ,

    Defendant.
_____/

**SENTENCING MEMORANDUM**

    Samuel Ernesto Mendez, by and through his undersigned attorney, respectfully moves this Honorable court for the imposition of a sentence in line with his mandatory term of imprisonment of ten years, which would be sufficient, but not greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553(a). As grounds in support, Mr. Mendez states the following:

**(a) Nature and Circumstances of the Offense**

    There is no argument to be made that the nature of the offense in this case is not serious. Mr. Mendez fully acknowledges and takes responsibility for his actions. Nevertheless, the nature and circumstances of this offense differs from other cases that have been before this Honorable Court. The essential facts of this case are reflected in the Presentencing Report (PSR), to which Mr. Mendez has no unresolved objections. (Doc. 50). Mr. Mendez's offense stems from a ten-month relationship he engaged in with a minor. From on or about February 12, 2022, Mr. Mendez met the minor via a Snapchat group conversation. At that time the minor had posted a picture of her tongue and various people on the chat were commenting

on her picture. A few days later, the minor and Mr. Mendez started a separate chat. They chatted for days without any sexual content and shared each other's age. Mr. Mendez truthfully told the minor he was 28 years old. Likewise, the minor told him she was 12 years old. For months, Mr. Mendez and the minor chatted via Snapchat and other social media platforms, with over 97% of chats referring to general topics of discussion about home life, their day, music, drawing, movies, etc. By May 2022, Mr. Mendez and the minor were saying "I love you" to each other.

Then in June 2022, Mr. Mendez took a trip to Florida to meet the minor in-person. In his post-Miranda interview, he admitted to engaging in sexual contact with the minor at a hotel. During the forensic interview of the minor, she was asked, "At the hotel, tell me anything that happened that you were not okay with?" She responded, "Nothing." Then the interviewer said, "Tell me things that happened that you were okay with." Response, "Everything."

After meeting in-person in June 2022, the relationship between Mr. Mendez and the minor continued in much of the same way. They chatted daily with minimal sexual content. There were no other in-person meetings. In October 2022, the minor's mother contacted the FBI. Thereafter, agents executed a search warrant on December 1, 2022, and arrested Mr. Mendez at his parent's house in Philadelphia, Pennsylvania. Mr. Mendez has remained in custody since the date of his arrest.

**(b) History and Characteristics of Samuel Ernesto Mendez**

Samuel Mendez was born in Philadelphia, Pennsylvania. He was raised by his biological

parents, who have been married for 33 years. His father is a retired landscaper and his mother, a homemaker. Neither of his parents graduated from high school. His parents are humble, church-going, hardworking individuals. They strived to give Mr. Mendez and his older brother a good childhood in a home that was free from domestic violence, neglect, or sexual abuse.

From a young age, his parent noticed Mr. Mendez was different. He did not play with other children much and lacked social skills. His mother recalls he had a sensitivity to loud noises and did not like physical touch. At age 4, he received speech therapy due to speech delay. His speech therapy continued through elementary school. In second grade, his teacher designated him a "slow learner" and he was held back. By fifth grade he was diagnosed with learning disabilities, but instead of enrolling him in special classes, his mother opted for a tutor. Throughout grade school, he was targeted by bullies and never spoke up for himself.

His high school years were the most difficult. Mr. Mendez experienced a lot of stress due to bullying. He developed a persistent problem with enuresis and refused to go to school. His parents took him to a therapist for a while, but Mr. Mendez refused to tell anyone what was wrong. Eventually he returned to school but called home often asking his mother to pick him up early from school. Academically, Mr. Mendez struggled. He was designated to an individual education plan, enrolled in remedial courses but continued to receive poor grade. By 2013, he aged out of his traditional high school and attended a learning academy in which he received his GED.

After completing school, Mr. Mendez went to work as a laborer for the same landscaping

company with his father. Although he was always willing to work and do as he was asked, Mr. Mendez wasn't very fast nor very detailed with his work. To keep customers from complaining, his father was constantly finishing his work or going back to re-do the edging. After about a year of landscaping work, Mr. Mendez worked as a machine operator at the same company his older brother was employed. Mr. Mendez relied on his brother's help there too. In less than a year, Mr. Mendez was laid off. Eventually, he went back to work at the landscaping company with his father.

At home, his parents described Mr. Mendez as spending most of his time in his room on the internet or playing video games. He did not maintain friendships beyond those with his cousins and other immediate relatives.

In his letter of support his cousin, Alex Mendez, states,

> Over the years I've always notice how behind he was in maturing, growing out of being a kid. He never really was good at anything that had to do with being an adult. I never really put much thought into it but now I know deep down in my heart it's because of some mental disability he has…. Before all this happened he was still at home with his parents with no sign of ever leaving [sic] on his own.

His cousin, Jordan Mendez, states the following about Mr. Mendez,

> Samuel Mendez is my cousin, I will always see him as my little cousin that I had to defend as a kid from being bullied and picked on…. While Sam is a good and caring person, he has some disabilities I've notice over the years. He is not mentally and emotionally mature, it's as if that part of his brain stopped developing. I say this because he never showed interest in things that adults show interest in, he never moved out of the house with his parents or even mentioned living on his own, I do not think he has ever made a major life decision without the influence or guidance of someone he trusted.

Tamara Mendez, an older cousin of Mr. Mendez provided a letter of support stating,

> I respect that Samuel has found himself in a lot of trouble with what he has done, but I would like to offer a fuller picture of him as a person. He is very hard working, he spent most of his time working and at home. He has always been very helpful to his mother and father which whom he has lived with all his life. He has never been very social, outside of family events. He is not one to go out and party, he would prefer to be home. He has always been interested in video games and technology, as a teen he and my brothers would spend lots of time playing together…. He has always been very timid, soft spoken, and nervous around new people.

Mr. Mendez's parents and older brother have also included letters of support for Mr. Mendez. They all describe him as "quiet," "shy," and a good person. Although his parents saw deficits in Mr. Mendez, they lacked the sophistication or knowledge to recognize that Mr. Mendez needed continued therapies. They now understand the need for and importance of Mr. Mendez to participate in a comprehensive psychiatric evaluation to understand his short-comings and needed treatment.

**(c) The Need to Protect the Public, to Afford Deterrence, and Provide Just Punishment**

The federal legislature has set a minimum mandatory ten years of imprisonment for the instant offense. 18 U.S.C. § 2422(b). In doing so, the legislature contemplated that there are cases with circumstances that may warrant a ten-year term of imprisonment as an appropriate sentence. The sentencing guidelines, considering the specific offense characteristic in this case, scores Mr. Mendez at a total offense level 31 and a criminal history category I for a guideline imprisonment range of 108 to 135 months. Counsel submits that a sentence of 120 months in this case protects the public and provides just punishment, while also taking into account Mr. Mendez's deficits and other 3553(a) factors.

When Mr. Mendez began to chat with the minor in this case, he did not know her age.

5

The minor had been posting inappropriate pictures of herself, to include partial nude pictures, without the request of Mr. Mendez. Unlike other cases, Mr. Mendez did not groom the minor in this case. He did not direct or instruct the minor in any of her actions. He also did not blackmail or threaten her.

In his psychosexual evaluation Dr. Melvin Pagan Gonzalez, Psy.D opines that Mr. Mendez is a low to moderate risk for reoffending. He also recommends that Mr. Mendez participate in an autism evaluation to help inform his need for treatment. Overall, the Court should consider that Mr. Mendez has demonstrated acceptance of responsibility for the offense. He never impeded or obstructed justice. He admitted to his actions with the minor at his arrest. It is clear from the psychosexual evaluation that Mr. Mendez needs treatment. Mr. Mendez wants that treatment. His intentions were never to hurt someone or to force anyone to engage in non-consensual sexual conduct. His actions were wrong and are illegal. But in balancing all the 3553(a) factors, it is respectfully submitted that a sentence of 120 months with an extensive term of supervised release is sufficient but not greater than necessary to accomplish the goals of sentencing.

## **CONCLUSION**

Mr. Mendez respectfully proposes a sentence of ten years imprisonment followed by an extensive period of supervised release is appropriate in this case. Such a sentence would be "sufficient, but not greater than necessary" to comply with the purposes of sentencing and satisfy the consideration and application of the factors enumerated in 18 U.S.C. § 3553(a).

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER, MDFL

*/s/ Nicole Mouakar*
Nicole Mouakar, Esq.
Florida Bar No. 0074389
Federal Defender's Office
201 South Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: Nicole_mouakar@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that undersigned electronically filed the foregoing *Sentencing Memorandum* with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to Courtney Richardson-Jones, Assistant United States Attorney, this 21st day of September 2023.

*/s/ Nicole Mouakar*
Attorney for Defendant